1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10

11  GEORGE HEROD, JR.,                )   NO. CV 06-6806 SS
                                      )
12                   Plaintiff,       )
                                      )   **MEMORANDUM DECISION AND ORDER**
13          v.                        )
                                      )
14  MICHAEL J. ASTRUE,                )
    Commissioner of the Social        )
15  Security Administration,          )
                                      )
16                   Defendant.       )
    _____    )

17

18

19                         **INTRODUCTION**

20

21      Plaintiff George Herod ("Plaintiff") brings this action seeking to

22  reverse and remand the decision of the Commissioner of the Social

23  Security Administration (the "Commissioner" or the "Agency") denying his

24  application for Supplemental Security Income ("SSI") benefits.   The

25  parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction

26  of the undersigned United States Magistrate Judge.   For the reasons

27  stated below, the decision of the Agency is REVERSED and REMANDED for

28  further proceedings.

\\

**PROCEDURAL HISTORY**

On February 4, 2004, Plaintiff filed an application for SSI benefits claiming that he became disabled on January 1, 2000. (Administrative Record ("AR") 70-73). The Agency denied his application and he submitted a request for reconsideration on June 14, 2004. (AR 62). The Agency denied his application again on June 24, 2004. (AR 55-59). Plaintiff then requested a hearing, which was held before Administrative Law Judge ("ALJ") Lauren R. Mathon on November 29, 2005. (AR 23-27, 47-48, 53, 217-253). Plaintiff appeared with counsel and testified. (AR 15). Kathleen McAlpine, a vocational expert, also testified at the hearing. (AR 15, 217).

On April 19, 2006, the ALJ issued a decision denying benefits. (AR 12-22). Plaintiff sought review before the Appeals Council, which denied his request on September 26, 2006. (AR 4-6, 10-11). Plaintiff filed the instant action on November 2, 2006. Pursuant to the Court's Case Management Order, the parties filed a Joint Stipulation ("Jt. Stip.") on December 6, 2007.

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[1] and that is expected to

---

[1] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. § 416.910.

2

result in death or to last for a continuous period of at least twelve months. <u>Reddick v. Chater</u>, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. § 416.920.  The steps are:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2)   Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)   Is the claimant capable of performing his past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)   Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

3

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. § 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. If, at step four, the claimant meets his burden of establishing an inability to perform the past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"),[2] age, education and work experience. Tackett, 180 F.3d at 1100; 20 C.F.R. § 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful employment since his alleged onset date. (AR 16, 21). At step

---

[2]    Residual functional capacity is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. § 416.945(a).

4

two, the ALJ found that Plaintiff's bilateral pes planus[3] is a severe impairment but that his partial finger amputation and mental health limitations are "non-severe."  (AR 16, 21-22).  The ALJ noted that Plaintiff reported "occasional visions [and] feelings of depression." (AR 17).  However, she observed that with an increased dose of Lithium, Plaintiff "hear[s] voices infrequently" and sleeps better.  (AR 17). The ALJ found Plaintiff's "clinical and laboratory findings to be disproportionate to the severity of pain and psychological symptoms he () alleged."  (AR 19).  She concluded that although Plaintiff was diagnosed with bipolar and mood disorders, he presented "an overall improvement in mood with minimal symptoms when . . . compliant with medication."  (AR 20).

At step three, the ALJ found that Plaintiff's impairments, either singly or in combination, do not meet or equal the requirements of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 21).  At step four, the ALJ determined that Plaintiff retained a physical RFC for sedentary work.  (AR 16, 22).  Specifically, she found:

> The [Plaintiff] retains the ability to lift and carry [ten]
> pounds.  He is able to sit for [six] hours and stand and/or
> walk for [two] hours in an [eight]-hour workday.  He has no
> other exertional or non-exertional limitations.

---

[3]    Pes Planus is a condition where the longitudinal arch of the foot is broken down and the entire sole touches the ground.  This is also known as "flatfoot."  Stedman's Medical Dictionary 1356 (Maureen Barlow Pugh ed., Lippincott Williams & Wilkins 2000) (1911).

(AR 21-22).  The ALJ also determined that Plaintiff has no past relevant work and more than a high school education.  (AR 22).

At step five, the ALJ found that based on Plaintiff's age, educational background, work experience, RFC and the vocational expert's testimony, there are a significant number of jobs in the national economy that the Plaintiff can perform, including work as a receptionist or information clerk.  (AR 17, 21-22).  Accordingly, the ALJ found that Plaintiff was not disabled.  (AR 16, 21-22).

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance."  Reddick, 157 F.3d at 720.  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion."  Id.  To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing that conclusion, the

1  court may not substitute its judgment for that of the Commissioner.

2  Reddick, 157 F.3d at 720-21.

3

4                              **DISCUSSION**

5

6       Plaintiff argues that the ALJ erred in rejecting his uncontroverted

7  mental limitations and in finding that his mental impairment is not

8  severe. (Jt. Stip. at 4-6). Specifically, Plaintiff contends that the

9  ALJ rejected "the uncontroverted opinion of an examining doctor . . .

10 [without] clear and convincing reasons supported by substantial evidence

11 in the record." (Jt. Stip. 4). He further argues that the ALJ should

12 not "equate" "some improvement with treatment . . . with a finding of

13 a non-severe mental impairment." (Jt. Stip. 5). As there was

14 significant evidence in the record of a severe mental impairment, the

15 Court finds that the ALJ failed to properly assess Plaintiff's mental

16 impairment at step two.

17

18      By its own terms, the evaluation at step two is a de minimis test

19 intended to weed out the most minor of impairments. See Bowen v.

20 Yuckert, 482 U.S. 137, 153-154, 107 S. Ct. 2287, 96 L. Ed. 2d 119

21 (1987); Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2005)

22 (stating that the step two inquiry is a de minimis screening device to

23 dispose of groundless claims) (quoting Smolen, 80 F.3d at 1290). An

24 impairment is not severe only if the evidence establishes a slight

25 abnormality that has only a minimal effect on an individual's ability

26 to work. Smolen, 80 F.3d at 1290 (internal quotations and citations

27 omitted).

28

                                    7

The ALJ here applied more than a <u>de minimis</u> test when she determined that Plaintiff's mental impairment is not severe. Moreover, this error was not harmless because after the ALJ erroneously found the impairment non-severe, she failed to adequately address the remaining steps of the Secretary's regulations governing mental impairments, as described below.

Where there is evidence of a mental impairment that allegedly prevents the plaintiff from working, the Agency has supplemented the five-step sequential evaluation process with additional regulations.[4] <u>Maier v. Comm'r of the Soc. Sec. Admin.</u>, 154 F.3d 913, 914-915 (9th Cir. 1998) (citing 20 C.F.R. § 416.920a) (per curiam). First, the ALJ must determine the presence or absence of certain medical findings relevant to the plaintiff's ability to work. 20 C.F.R. § 416.920a(b)(1). Second, when the plaintiff establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 C.F.R. § 416.920a(c)(2)-(4). Third, after rating the degree of loss, the ALJ must determine whether the claimant has a <u>severe</u> mental impairment. 20 C.F.R. § 416.920a(d)(emphasis added). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920a(d)(2). Finally, if a listing is not met, the ALJ must then assess the

_____

[4] These additional steps are intended to assist the ALJ in determining the severity of mental impairments at steps two and three. The mental RFC assessment used at steps four and five of the evaluation process, on the other hand, require a more detailed analysis. Social Security Ruling 98-8p, 1996 WL 374184 at * 4.

plaintiff's RFC, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding the plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§ 416.920a)c)(3)]." 20 C.F.R. § 416.920a(d)(3), (e)(2).

The regulations describe an impairment as follows:

A physical or mental impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a plaintiff's] statements of symptoms.

20 C.F.R. § 416.908; see also Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005) (noting that the existence of a medically determinable physical or mental impairment may only be established with objective medical findings) (citing Social Security Ruling 96-4p, 1996 WL 374187 at *1-2).

Here, Plaintiff's mental impairment is sufficient to satisfy the de minimis test for severity. Plaintiff's mental health treatment records date back to January 2002 and indicate that he was diagnosed with bipolar and other mood disorders. (AR 17, 21, 144-55, 162, 198-211, 223, 251). On January 10, 2002, Mary LaMonte, a licensed clinical social worker, reported that Plaintiff "feels low [and] depressed." (AR

155).   After examining Plaintiff she found that he has "feelings of isolation" and a history of taking numerous psychotropic medications. (AR 152, 155).   Ms. LaMonte diagnosed Plaintiff with bipolar disorder and referred him to Dr. W. Drucker for re-assessment and medication. (AR 155, 251).

Dr. Drucker, Plaintiff's treating psychiatrist, also diagnosed Plaintiff with bipolar disorder[5] and placed him on a regimen of Lithium and other psychotropic medications to help manage his symptoms.  (AR 17, 145-46, 209, 223, 251).  These symptoms include feelings of depression, paranoia, suicidal ideation, occasional visions, and auditory hallucinations.  (AR 17, 150, 211, 251).  Plaintiff reports that he visited Dr. Drucker every other month since "the '90s." (AR 233; see also AR 145-46, 199-200, 209, 251).  Plaintiff's psychotropic medication progressively increased from February 2002 through March 2004, indicating a severe mental impairment.  (AR 145-46, 251).

Further, on April 12, 2004, psychiatrist Ernest Bagner III, M.D. examined Plaintiff and concluded that he suffers from a "mood disorder, not otherwise specified." (AR 17, 162-63).  He noted that Plaintiff's psychiatric medication[6] works with only "moderate success" and that he

---

[5]   The record is unclear regarding when the initial diagnosis occurred.  However, Plaintiff reports that he began seeing Dr. Drucker in "the '90s" and that he was diagnosed with bipolar disorder.  (AR 223).  The available medical treatment logs indicate that Dr. Drucker prescribed psychotropic medication from February 2002 through September 2005.  (AR 145-46, 199-200, 251).  Additionally, an Outpatient Medication Review form, signed by Dr. Drucker on May 31, 2002, indicates that Plaintiff received medication to treat symptoms associated with bipolar disorder.  (AR 209).

[6]   Plaintiff's psychiatric medication includes but is not limited to Lithium, Tenex and Seroquel.  (AR 209).

10

would have "mild to moderate limitations handling normal stresses at work." (AR 163). The Disability Determination Services (DDS) psychiatrist, Dr. Brian S. Taylor, also diagnosed Plaintiff's "affective disorder" and evaluated his RFC. (AR 172, 178-79). Dr. Taylor concluded that Plaintiff has mild to moderate limitations in his ability to understand, remember and carry out detailed instructions, to respond appropriately to changes in the work setting, to complete a normal workday/workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace. (AR 17, 178-79). Thus, substantial medical evidence shows that Plaintiff suffers from a severe mental impairment. See 20 C.F.R. § 416.927(a)(2) ("Medical opinions . . . that reflect judgments about the nature and severity of [a plaintiff's] impairment(s), including symptoms, diagnosis and prognosis," are evidence that a plaintiff may submit in support of his disability claim). Accordingly, the de minimis test of severity is satisfied.

Although the ALJ relied on the fact that medication diminished Plaintiff's symptoms, this fact alone does not demonstrate that Plaintiff's mental impairment is not severe. See Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person . . . makes some improvement does not mean that the person's impairments no longer seriously affect [his] ability to function in a workplace"). Given the other evidence in the record, the ALJ erred when she concluded that Plaintiff's mental impairment was not severe. See 20 C.F.R. § 416.920a(b)(1).

11

Remand for further proceedings is appropriate where additional proceedings could remedy defects in the Commissioner's decision.  <u>See</u> <u>Harman v. Apfel</u>, 211 F.3d 1172, 1179 (9th Cir. 2000); <u>Kail v. Heckler</u>, 722 F.2d 1496, 1497 (9th Cir. 1984).  Because the ALJ improperly evaluated the severity of Plaintiff's mental impairment, the case must be remanded to remedy this defect.

Upon remand the ALJ must conduct the supplemental evaluation of the mental impairment evidence.  Normally, the ALJ must first determine the presence or absence of certain medical findings relevant to a plaintiff's ability to work.  20 C.F.R. § 416.920a(b)(1).  However, this Court has determined that there is objective medical evidence that Plaintiff suffers from a mental impairment relevant to his ability to work.  Thus, the ALJ need not address this question.  Accordingly, the ALJ must only complete the remaining inquiries required by the supplemental evaluation of mental impairment evidence.  <u>See</u> 20 C.F.R. § 416.920a(c)-(e).

\\

\\

\\

\\

\\

\\

\\

\\

\\

\\

\\

**CONCLUSION**

Consistent with the foregoing, IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision.  IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: June 23, 2008

                                        /S/
                              _____
                              SUZANNE H. SEGAL
                              UNITED STATES MAGISTRATE JUDGE